TENNESSEE BAPTIST CHILDREN'S HOMES, INC., and Dr. Evans B. Bowen, Executive Director-Treasurer of the Tennessee Baptist Children's Homes, Inc.

v.

UNITED STATES of America.

No. 2–83–0016.

United States District Court,
M.D. Tennessee,
Northeastern Division.

Nov. 14, 1984.
On Motion to Amend Dec. 10, 1984.

Frank C. Ingraham, Nashville, Tenn., John Stophel, Richard Bethea, Chattanooga, Tenn., for plaintiffs. ·

Joe B. Brown, U.S. Atty., Nashville, Tenn., Gregory L. Nelson, Tax Div., Civil Trial Section, Southern Region Dept. of Justice, Washington, D.C., for defendant.

MEMORANDUM

MORTON, Senior District Judge.

Prior to 1969, all tax exempt organizations "operated, supervised, or controlled by or in connection with a religious organization," were excused from filing information return Form 990. Rev. Act of 1943,

Ch. 63, § 117(f), 58 Stat. 37 (1944).[1] In a letter dated July 20, 1956, Tennessee Baptist Children's Homes, Inc. (TBCH) was informed by the IRS that it would not be required to file Form 990 because it fell within one of the then-existing exemptions of I.R.C. § 6033(a). In 1969, however, Congress narrowed I.R.C. § 6033 so as to provide mandatory[2] exemption only for "churches, their integrated auxiliaries, and conventions or associations of churches," certain "exempt organizations with gross annual receipts of less than $5,000," and "the exclusively religious activities of any religious order." I.R.C. § 6033(a)(2)(A).

It took the government six years to promulgate the regulations interpreting that amendment. When it did so, it defined an "integrated auxiliary" of a church as a 501(c)(3) organization, affiliated with a church, whose principal activity is exclusively religious. Treas.Reg. § 1.6033–2(g)(5)(i). The regulations further provided that "[a]n organization's principal activity [would] not be considered to be exclusively religious if that activity is educational, literary, charitable, or of another nature (other than religious) that would serve as a basis for exemption under section 501(c)(3)." *Id.* at (5)(ii).

By letter dated December 8, 1978, Dr. Evans Bowen informed the IRS that TBCH's Board of Trustees had voted that TBCH would not file Form 990 because its principal activity was exclusively religious; or, in the alternative, that requiring it to file would violate the religion clauses of the First Amendment to the United States Constitution. A series of exchanges between the IRS and TBCH ensued. The IRS maintained that TBCH's principal activity was child care, and since child care would be deemed a charitable enterprise if undertaken by a secular organization, TBCH's principal activity was not exclusively religious.[3] *See id.* TBCH asserted that its principal activity was persuading the children in its charge to accept Jesus Christ as their Saviour. When TBCH remained ada-

---

1. The 1943 amendment to § 117 provided in full as follows:

 (f) Every organization, except as hereinafter provided, exempt from taxation under section 101 shall file an annual return, which shall contain or be verified by a written declaration that it is made under the penalties of perjury, stating specifically the items of gross income, receipts, and disbursements, and such other information for the purpose of carrying out the provisions of this chapter as the Commissioner, with the approval of the Secretary, may by regulations prescribe, and shall keep such records, render under oath such statements, make such other returns, and comply with such rules and regulations as the Commissioner, with the approval of the Secretary, may from time to time prescribe. No such annual return need be filed under this subsection by any organization exempt from taxation under the provisions of section 101—
 (1) which is a religious organization exempt under section 101(6); or
 (2) which is an educational organization exempt under section 101(6), if such organization normally maintains a regular faculty and curriculum and normally has a regularly organized body of pupils or students in attendance at the place where its educational activities are regularly carried on; or
 (3) which is a charitable organization, or an organization for the prevention of cruelty to children or animals, exempt under section

 101(6), if such organization is supported, in whole or in part, by funds contributed by the United States or any State or political subdivision thereof, or is primarily supported by contributions of the general public; or
 (4) *which is an organization exempt under* section 101(6), if such organization is operated, supervised, or controlled by or in connection with a religious organization described in paragraph (1); or
 (5) which is an organization exempt solely under section 101(3); or
 (6) which is an organization exempt under section 101(15), if such organization is a corporation wholly owned by the United States or any agency or an instrumentality thereof, or a wholly owned subsidiary of such a corporation.
 (b) YEARS TO WHICH APPLICABLE.—The amendments made by subsection (a) shall be applicable with respect to taxable years beginning after December 31, 1942.

2. The Secretary has the discretion to exempt an organization from filing an information return whenever he determines "such filing is not necessary to the efficient administration of the internal revenue laws." I.R.C. § 6033(a)(2)(B).

3. The Government conceded that TBCH was a 501(c)(3) organization "affiliated" with a church or a convention or association of churches. *See* Treas.Reg. § 1.6033–2(g)(5).

mant in its refusal to file Form 990, penalties were assessed against it and Dr. Bowen for the tax years 1977 to 1982. *See* I.R.C. § 6652(d).

 After paying the penalties and interest due and exhausting their administrative remedies to recover the same, the plaintiffs filed the present action. The court assumed jurisdiction pursuant to 28 U.S.C. § 1346(a)(1). The Government moved for summary judgment. The court withheld its ruling on that motion until trial. That motion was obviously denied in part by the submission of a genuine issue of fact to the jury: that is, whether the principal activity of TBCH was exclusively religious.[4] The jury found that it was and judgment was entered for the plaintiffs accordingly.[5] Following the entry of judgment, the Government filed a motion J.N.O.V. which was denied. The plaintiffs have applied for an award of costs and attorneys' fees pursuant to the Equal Access to Justice Act. 28 U.S.C. § 2412. As the order accompanying this memorandum states, the application for attorneys' fees and costs is denied. The purpose of this memorandum is to explicate the legal basis for the rulings mentioned above.

## I.

 Most of the facts of this case were undisputed. TBCH is the separately incorporated child care facility of the Tennessee Baptist Convention.[6] The Tennessee Baptist Convention governs TBCH by appointing TBCH's Board of Trustees. It also appropriates funds for TBCH's operation. TBCH does not receive government funding of any kind. It accounts for its expenditures by filing a certified audit with the Tennessee Baptist Convention annually.

TBCH operates four campuses scattered across the State of Tennessee. The children on these campuses live in cottages. Each cottage houses two houseparents and several children (usually eight). Essentially, each cottage functions as a family. Daily activities such as eating, sleeping, cleaning, etc., are performed in the cottage. The children attend public schools during the day.

To say that religious indoctrination permeates TBCH is an understatement. TBCH accepts children on a nonsectarian basis, but thereafter every effort is made to convert the children to the Baptist faith. Each day begins with a devotional period that usually involves some form of *Bible* study. There are no churches on campus. Instead, children attend local Baptist churches three times a week in an effort to integrate them into the Baptist community at large. Most importantly, every effort is made to relate experiences to Baptist tenets and beliefs.[7]

To insure that these tenets and beliefs are accurately communicated to the children, membership in a Baptist church is a

---

**4.** The court also asked the jury to decide whether TBCH was a church. It found that it was not. Had the result been otherwise, the court would have been compelled to enter judgment J.N.O.V. The evidence at trial clearly proved that TBCH was not considered a church by the Baptists themselves, because, among other things, it was subservient to a human institution. The court agrees with the Government that the 14 factors, *See e.g. Williams and Miller Homes v. United States,* 540 F.Supp. 310, 317–18 (W.D.Va.1982); Treas.Reg. § 1.511–2(a)(3)(ii) (1984), used by the IRS and the courts to determine whether an entity is a church should only be considered when a party claims that an entity is a church according to its own tenets and beliefs. The courts have enough to do without deciding if an organization is something its members admit it is not.

**5.** This result was mandated by the Government's concessions that TBCH was a 501(c)(3) organization "affiliated" with an association of churches. *See* Treas.Reg. § 1.6033–2(g)(5).

**6.** The Tennessee Baptist Convention is a voluntary association of Baptist churches located in Tennessee. The business of the Convention is carried on by "messengers" sent by the individual churches. Although the messengers vote on projects, budgets, and officers of the Convention, none of their actions are binding until ratified by the churches they represent.

**7.** Baptists refer to this process as "witnessing." It usually involves explication of a Christian doctrine, explanation of how the doctrine applies to the situation at hand, and prayer that the person witnessed to will grow in the Christian faith.

prerequisite to employment with TBCH. All TBCH administrative officers are ordained Baptist ministers. Houseparents must be members in good standing of their churches and be recommended for the position by their pastor. In addition, houseparents receive religious training before assuming their posts.

## II.

Given the facts of this case, it is not surprising that the jury found TBCH's principal activity was exclusively religious. The Government did not contest the religious motivation for TBCH's actions. Its theory was that TBCH's principal activity was child care. Obviously, the jury disagreed. Considering the fact that the regulations speak in terms of "principal" activity as opposed to any substantial activity, the court cannot say that reasonable men could only have reached a decision contrary to that rendered by the jury in this case. The jury could have easily decided that TBCH's child care services were only rendered in an effort to achieve its principal purpose of converting children to the Baptist religion.

In the alternative, the jury could have found that the rendering of child care services was itself an exclusively religious act. The Government's argument that act and motivation must be separated in determining whether an activity is exclusively religious is impracticable. Indeed, the court is at a loss to determine what distinguishes religious acts from other acts if it is not the motivation for action. The taking of bread and wine, for instance, may be an act of simple sustenance or the most profound sacrament depending on the participant's motivation. In short, the particular facts of this case were sufficient to support the jury's verdict.

The Government also objected to the court's failure to instruct the jury as to Example 3 of Treas.Reg. § 1.6033–2(g). In the court's opinion, to instruct on an illustration as closely analogous to the facts of a case as Example 3 was to the facts of this one, would be an invasion of the province of the jury. The rules of law that were read to the jury were clear and straightforward. It was the jury's duty to apply those rules to the facts—not the court's.

Given the fact that the plaintiffs were found to be exempt from filing Form 990 under the regulations, the court need not discuss the numerous challenges they raised to those regulations. In passing, the court will say it found those challenges unpersuasive. The regulations are a well-crafted attempt to effectuate the intent of Congress without violating citizens' constitutional rights. In the 1969 amendments to I.R.C. § 6033, Congress drastically reduced the types of organizations exempt from filing Form 990. In fact, excluding those organizations with de minimis revenues, Congress limited exemptions solely to religious entities organized in the orthodox forms of orders and churches. *Compare* Rev.Act. of 1943, Ch. 63, § 117(f), 58 Stat. 37 (1944) *with* I.R.C. § 6033(a)(2). It was wholly rational for the IRS to conclude that it was the purely or exclusively religious nature of these institutions which Congress felt justified their exemption; otherwise, why would Congress not have retained the far broader exemption for organizations "operated, supervised, or controlled by or in connection with a religious organization ...?" *See* Rev.Act of 1943, Ch. 63, § 117(f)(4), 58 Stat. 37 (1944). As for the constitutional challenges raised by the plaintiffs, if I.R.C. § 6033 and its progeny are unconstitutional it is because they establish all orthodox religious forms—not just hierarchical ones. *See NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 518 n. 11, 99 S.Ct. 1313, 1327 n. 11, 59 L.Ed.2d 533, 552 n. 11 (1979) (Brennan, J., dissenting).

■ From the foregoing discussion it should be clear that this was a very close case. It turned on the facts peculiar to it. To suggest that the Government was not substantially justified in litigating this matter borders on the frivolous. In fact, the plaintiffs' behavior regarding this case was somewhat contumacious. It is the court's

understanding that Dr. Bowen sent his noncompliance letter to the IRS before it had even notified TBCH that it would be required to file Form 990. In other words, the plaintiffs went looking for a fight and found it. In our litigation-clogged society, that is not the kind of behavior that should be encouraged. Consequently, not only shall the plaintiffs' motion for attorneys' fees be denied, they shall also be required to bear their costs assessable under 28 U.S.C. § 1920 themselves.

Finally, the plaintiffs have requested the court to award them prejudgment interest on this judgment. As the Government points out, however, interest cannot be properly calculated until the refund is paid. On that date, the parties themselves should be able to calculate and agree upon the interest due. If they cannot, they may submit their calculations to the court, and it will order payment of the proper amount of interest. Both parties agree that the amount of penalties and interest paid by the plaintiffs to the defendant was $29,-665.12.

An appropriate order shall be entered.

### ON MOTION TO AMEND

The plaintiffs have moved the court to amend its memorandum of November 14, 1984. Their motion shall be granted in part and denied in part.

The plaintiffs first request the court to amend footnote six of its memorandum to read that the acts of messengers to the Tennessee Baptist Convention are binding on the Convention, its programs and its agencies. Plaintiffs' request is denied. There was no proof that the Tennessee Baptist Convention was a separately incorporated entity. To the contrary, the plaintiffs stressed that the Tennessee Baptist Convention was a voluntary association. If the members that make up an association are not bound by their agents' actions, a fortiori the association is not bound. Indeed, the court was of the opinion that the nonbinding nature of the messengers' actions coupled with the corporate shield interposed between the Tennessee Baptist

Convention's agencies and its members were reasonable justifications for the government's desire to examine those agencies more closely than those that were not incorporated separately from their sponsoring churches.

The plaintiffs also request the court to strike the language in its opinion characterizing their litigation of this suit as contumacious. After reflecting upon the arguments in the plaintiffs' brief, the court is of the opinion that beginning at the bottom of page nine and continuing through page ten the following language should be stricken from its opinion:

> In fact, the plaintiffs' behavior regarding this case was somewhat contumacious. It is the court's understanding that Dr. Bowen sent his noncompliance letter to the IRS before it had even notified TBCH that it would be required to file Form 990. In other words, the plaintiff went looking for a fight and found it. In our litigation-clogged society, that is not the kind of behavior that should be encouraged. Consequently, not only shall the plaintiffs' motion for attorneys' fees be denied, they shall also be required to bear their costs assessable under 28 U.S.C. § 1920 themselves.

In its place, the following sentence shall be substituted:

> Considering the closeness of the legal issues involved in this matter and the good faith with which the government litigated those issues, the parties shall bear their own costs.

An appropriate order shall be entered.