Ricky Darvin MARTIN (80–1273), Reginald Wayne Beckwith (80–1274), Kenneth Robert Delk (80–1284), Brian Brittingham (80–1295), Lieutenant T. Mitchell (80–1297), Clayton Green (80–1316), Petitioners-Appellants,

Bradley James Johnson, individually and on Behalf of all other similarly situated (83–1448, 83–1449), Plaintiffs-Appellants, Cross-Appellees,

v.

ATTORNEY GENERAL OF the UNITED STATES; Norman Carlson, Director, United States Bureau of Prisons; Harold G. Miller, Warden; United States Parole Commission, (80–1273, 80–1274, 80–1295, 80–1297, 80–1316), Respondents-Appellees, (83–1448, 83–1449), Defendants-Appellees, Cross-Appellants.

Nos. 80–1273, 80–1274, 80–1284, 80–1295, 80–1297, 80–1316, 83–1448 and 83–1449.

United States Court of Appeals, Sixth Circuit.

Argued July 11, 1984.

Decided Aug. 19, 1985.

Martin A. Geer, argued, Kessler & Geer, Ann Arbor, Mich., for general appellants.

Deborah J. Gaskin, Asst. U.S. Atty., Ellen G. Ritteman, Asst. U.S. Atty., argued, L. Michael Wicks, Asst. U.S. Atty., Joel M. Shere, U.S. Atty., Detroit, Mich., Rockne Chickinell, argued, U.S. Parole Com'n, Office of Gen. Counsel, Chevy Chase, Md., for general appellees.

Before ENGEL, MERRITT and JONES, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

This appeal is based on a class action filed on behalf of all present and future youth offenders who have been or will be confined at the Federal Correction Institute at Milan, Michigan pursuant to the Federal Youth Corrections Act (YCA), 18 U.S.C. §§ 5005–5026 (repealed October 12, 1984, Crime Control Act, § 218(a)(8), 98 Stat. 2027).[1] The parties have raised four issues on appeal. First, the plaintiffs argue that the Parole Commission's use of convictions that have been "set aside" under the YCA violates 18 U.S.C. § 5021. Second, the plaintiffs contend that the Commission may not extend a YCA offender's period of in-

---

1. Although the YCA was repealed on October 12, 1984 by the Crime Control Act of 1984, the YCA was applicable at the time of the sentencing of each of the class members. The class included "all present and future offenders who have been or who will be sentenced under the Youth Corrections Act and who have been or will be detained pursuant to such sentences at Milan."

In May, 1982, the Bureau of Prisons stopped sending new YCA offenders to Milan. Consequently, there are no class members who were sentenced after the repeal of the YCA. The repeal of the YCA, thus, does not affect the sentences of the class members. *See United States v. Abushaar*, 761 F.2d 954, 955–56 (3d Cir.1985).

carceration by penalizing youthfulness in the calculation of salient factor scores. Third, the plaintiffs assert that the mere designation of three facilities as institutions to house exclusively YCA offenders does not satisfy the YCA's requirement that offenders be provided individualized treatment in a variety of settings. The defendants, in their cross-appeal, raise the issue of whether the YCA requires the Commission to give greater attention to a YCA offender's performance in treatment programs than it gives to the performance of adult offenders.

The complaint alleged that the United States Bureau of Prisons' treatment of committed youth offenders violated their rights under the YCA and the Due Process Clause of the Fifth Amendment. The district court found that the Bureau had violated the YCA in several respects. First, the Bureau's "system of generalized, forced and uninformed classification and placement" was held to be inconsistent with the statutory provisions for individual consideration of YCA offenders. *Johnson v. Bell*, 487 F.Supp. 977, 982 (E.D.Mich. 1980). Second, the district court concluded that the Bureau had not segregated YCA offenders from other offenders as required by the Act. Third, the court held that the Bureau's programs for YCA offenders did not satisfy the statute's mandate that such inmates receive specialized and individualized treatment. Finally, the court stated that the Parole Commission appeared to be acting contrary to the YCA in "not assigning any importance or influence to the rehabilitative factor in determining release dates." *Id.* at 988.

On April 20, 1983, the court ordered the implementation of the Bureau's "Action Plan," dated September 30, 1981, as well as the implementation with a single modification of the "Joint Response of the Parole Commission and Bureau of Prisons on Release Policy and Procedures," dated September 9, 1982. These plans are national in scope and address the problems of classification, treatment, and parole of YCA offenders.

## I.

■ First, the plaintiffs contend that the Parole Commission's use of convictions "set aside" under the YCA violates 18 U.S.C. § 5021. Section 5021 provides:

(a) Upon the unconditional discharge by the division of a committed youth offender before the expiration of the maximum sentence imposed upon him, the conviction shall be automatically set aside and the division shall issue to the youth offender a certificate to that effect.

(b) Where a youth offender has been placed on probation by the court, the court may thereafter, in its discretion, unconditionally discharge such youth offender from probation prior to the expiration of the maximum period of probation theretofore fixed by the court, which discharge shall automatically set aside the conviction, and the court shall issue to the youth offender a certificate to that effect.

The Commission uses set-aside convictions as one of seven factors in determining an individual offender's salient factor score. The salient factor score is used in combination with offense severity guidelines to determine an offender's parole release date. The salient factor score formula provides:

*Setting aside or removal of juvenile or youth convictions is normally for civil purposes (to remove civil penalties and stigma).* Such convictions are to be counted for purposes of assessing parole risk.

Guideline Applications Manual, pp. 574–75. The district court failed to address this issue in its memorandum opinion. In a subsequent order, the district court rejected plaintiffs' contention that the above practice violates § 5021. Defendant contends that this issue does not present a justiciable controversy because the named plaintiff did not suffer an injury as a result of the Commission's practice and because *no* class member has been shown to have suffered injury because of the Commission's practice. We agree that under these circumstances, we are constrained by Arti-

cle III of the United States Constitution from reaching the merits of this issue. The jurisdiction of federal courts is limited to "cases and controversies." The fundamental inquiry as to the justiciability of an issue is whether the " 'conflicting contentions of the parties ... present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.' " *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) (quoting *Railway Mail Association v. Corsi,* 326 U.S. 88, 93, 65 S.Ct. 1483, 1487, 89 L.Ed. 2072 (1945)).

■ As noted, the named plaintiff has neither alleged nor shown that he or any other member of the class has a prior YCA conviction that has been set aside and has since been used by the Parole Commission to calculate his salient factor score. To have suffered such injury, a class member would have to have incurred a prior YCA conviction, have successfully completed a term of community supervision of at least one year (18 U.S.C. § 5017(b), (d) ), have been discharged from supervision and issued a set-aside certificate, and have committed a second offense after the discharge and have been sentenced for that second offense under the YCA. Because no class member has suffered an injury from the Commission's practice of using prior YCA convictions in calculating the salient factor score and because it is pure speculation that any class member ever will, we find this issue to be the type of abstract question that is outside the scope of the judicial power of federal courts as defined in Article III of the United States Constitution.

## II.

■ Second, the plaintiffs contend that the Commission's use of the offender's age as one of the factors in the calculation of the salient factor score is likewise inconsistent with the YCA in that use of this factor operates to deprive the offenders of the benefits of the YCA. Specifically, plaintiffs contend that Congress intended the benefits of the YCA to go to young persons and that they be "released when ready." Plaintiffs argue that by using age as a factor in the salient factor score the Commission is frustrating the very purpose of the YCA. The district court determined that age was a proper factor in that

[a]ge at the time of commission of an offense and prior convictions are significant, traditional and universally accepted factors in predicting future criminal conduct and to eliminate those factors from consideration would seriously hamper the Parole Commission in fulfilling one of its primary functions—determining a release date.

We agree with the district court that the use of age in the calculation of the salient factor score is appropriate. The Commission's past experience has shown that the age of the offender has significant predictive power in assessing parole risks. The salient factor score was initially constructed and validated on samples of federal prisoners released in 1970, 1971 and 1972. For this sample of 4,646 prisoners, the overall "success" rate was 71%. Success rate is defined generally as no return to prison for a sentence of 60 days or more, or as a parole violator, during a two year period after release. The Commission found that 85% of the releases who were 26 years of age or older at the time of the behavior leading to their first commitment, succeeded on supervision. For those 18–25 years of age, the success rate was 71%. The success rate was 60% for those offenders age 17 or younger.

Plaintiffs have not attacked these findings. They merely claim that the YCA was intended to help offenders *because of* their youth and that use of age as a factor operates as a punishment. Plaintiffs' argument ignores the central purpose of the YCA—the rehabilitation of youth offenders. We believe that the Commission's reliance on its past experience that age is a predictive factor in determining whether an offender is a good parole risk—i.e., has been sufficiently rehabilitated to reenter society—is not arbitrary or capricious. Be-

cause the rule is reasonably related to the purposes of the YCA, *see Compton v. Tennessee Department of Public Welfare,* 532 F.2d 561, 564 (6th Cir.1976), we sustain the validity of the Commission's regulation providing consideration of age as a factor in the calculation of the salient factor score.

### III.

■ Last, plaintiffs contend that the remedial order approved by the district court is inadequate because the designation of three existing facilities as institutions for the exclusive housing of YCA offenders does not meet the requirement set out in 18 U.S.C. §§ 5011 and 5012 that individualized treatment be provided in a variety of settings. Section 5011 provides:

Committed youth offenders not conditionally released shall undergo treatment in institutions of maximum security, medium security, or minimum security types, including training schools, hospitals, farms, forestry and other camps, and other agencies that will provide the essential varieties of treatment. The Director shall from time to time designate, set aside, and adapt institutions and agencies under the control of the Department of Justice for treatment. Insofar as practical, such institutions and agencies shall be used only for treatment of committed youth offenders, and such youth offenders shall be segregated from other offenders, and classes of committed youth offenders shall be segregated according to their needs for treatment.

18 U.S.C. § 5012 provides:

No youth offender shall be committed to the Attorney General under this chapter until the Director shall certify that proper and adequate treatment facilities and personnel have been provided.

The plan approved by the district court designated three existing facilities to serve as YCA-only facilities. The plan provides as follows:

Each of the YCA institutions is designated a classification center and will perform the functions required by the Youth

Corrections Act. At the present time, three institutions are designated to house YCA offenders:

a. Federal Correctional Institution, Englewood, Colorado. This designation is appropriate for male offenders in lower to medium Security Levels (SL–1 through low SL–4), particularly those offenders whose residences are in the western part of the United States.

b. Federal Correctional Institution, Morgantown, West Virginia. This designation is appropriate for SL–1 male offenders, particularly those offenders whose residences are in the eastern part of the United States, and for females in all Security Levels. On redesignation, Morgantown may be considered for higher than SL–1 males (particularly SL–2's) who have "out" or "community" custody and are otherwise suitable for a SL–1 correctional institution.

c. Federal Correctional Institution, Petersburg, Virginia. This designation is appropriate for male offenders in medium to high Security Levels (SL–2 through SL–6), high Security Levels (SL–2 through SL–6), particularly those offenders whose residences are in the eastern part of the United States.

New YCA commitments will be designated directly to one of the all-YCA institutions. Already committed YCA inmates, however, have been allowed to request to remain at their present institution provided the inmate either (a) is presently housed at a Security Level–1 institution or is a Security Level–1 inmate housed in an "administrative" institution; or (b) was scheduled for release prior to May 1, 1982. Approval of the sentencing court is required prior to determining whether such an inmate may remain in a non-YCA institution. Presently committed YCA inmates who do not meet the criteria of categories (a) or (b) above will be transferred to a YCA institution.

Plaintiffs contend that this plan is even more insufficient than the system was before the district court's decision. While they are now segregated from adult of-

fenders, they have lost the benefit of being close to home and family. They further contend that the plan fails to address the requirement of § 5011 that youth offenders be provided specialized treatment in a continuum of diverse settings.

We agree with plaintiffs that the approved plan is insufficient to meet the mandate of § 5011. Section 5011 provides for individualized classification and specialized treatment of YCA offenders. Yet the plan approved by the district court merely establishes one institution for all youth offenders whose release residence is in the West and two institutions for all youth offenders whose release residence is in the East. The plan assumes that the medium security facility at Englewood is appropriate for all classes of youth offenders regardless of their security risk. Many of the youth offenders at Englewood would thus be "overclassified"; they would be placed in a higher security facility than necessary, thus mixing, in one institution, distinct classes of offenders who have a wide range of treatment needs and who should be segregated under § 5011. For those youth offenders not placed in the minimum security facility at Morgantown, the plan merely removes them from the ordinary prison atmosphere of the Milan Federal Correctional Institution and transfers them to the ordinary prison atmosphere of the Englewood or Petersburg institutions, which are currently rated as medium and maximum security facilities respectively.

Further, Congress, in enacting the YCA, clearly envisioned specialized treatment. The approved plan provides only the limited array of treatment programs that had been available to the plaintiffs at Milan such as work and study release programs. We agree with plaintiffs that the limited array of treatment programs provided at Milan and the limited array of programs provided under the plan fail to implement the intent of Congress. Congress intended that, first, a complete study of a YCA offender's characteristics be conducted for the purpose of determining what type of treatment would best achieve the rehabilitation of the offender. Second, *after* such classification, YCA offenders are to be placed, depending on their individual rehabilitation needs, in segregated, diversified correctional settings close to their homes and families such as training schools, hospitals, farms, forestry and other camps. 18 U.S.C. § 5011; H.Rep. No. 2979, 1950 U.S.Code Cong. & Ad.News 3983, 3985–86.

■ Defendants contend that § 5015 provides the Bureau with discretion to determine what should constitute treatment. However, as the district court noted, that discretion is not unfettered. 487 F.Supp. at 985. Although the defendants have had thirty years to build alternative correctional settings, they have failed to do so. Although the YCA permits defendants to contract with public or private agencies for the treatment of youth offenders, 18 U.S.C. § 5013, defendants have failed to do so. Congress intended that the defendants either build a range of alternative facilities for youth offenders or contract with agencies outside their control. Defendants do not have discretion to implement some of the provisions of the YCA and not others. We, therefore, reverse the judgment of the district court in its adoption of the plan and remand the case to the district court to require the defendants to provide the type of rehabilitative programs envisioned by Congress in enacting the YCA.

**IV.**

■ Turning to the issue raised by defendants of whether the YCA requires the Commission to give greater attention to a YCA offender's performance in treatment programs than it does to that of an adult offender, we find this Court's recent decision in *Adams v. Keller*, 736 F.2d 320 (6th Cir.1984) (en banc), to be dispositive. In *Adams*, this Court held that the YCA does not require the Commission to consider, on a case-by-case basis, the rehabilitation and response of a prospective parolee incarcerated under the YCA to treatment programs. *Id.* at 325–26. This Court found that, in the 1976 amendment to § 5017(a) of

the YCA, "Congress altered the focus of parole decisions for youthful offenders by mandating that the Parole Commission no longer follow the traditional parole procedures of the YCA," but, instead, it is to follow parole criteria provided for all federal offenders in 18 U.S.C. § 4206. *Id.* at 325 (citations omitted). We noted, however, that the parole guidelines incorporate provisions for evaluation of a prisoner's institutional performance and response to treatment. *See* 28 C.F.R. § 2.20, general Note A. Consequently, although the Commission may consider a YCA offender's response to treatment in an unusual case, it is no longer *required* to make a separate, independent evaluation of this factor in each and every case. 736 F.2d at 326.

In the instant case, the order of the district court required the Commission to modify its parole criteria to give greater attention to the rehabilitation and response of YCA offenders than it gives to the rehabilitation and response of adult offenders. Such a requirement is contrary to this Court's decision in *Adams.* We, therefore, conclude that the district court erred by requiring implementation of a decision-making scheme that makes the rehabilitative factor an independent factor in determining release dates.

### V.

Accordingly, the judgment of the district court is vacated in part, affirmed in part, and reversed and remanded in part for proceedings consistent with this opinion.