TENNESSEE BAPTIST CHILDREN'S HOMES, INC. and Dr. Evans B. Bowen, Plaintiffs-Appellees, Cross-Appellants,

v.

UNITED STATES of America, Defendant-Appellant, Cross-Appellee.

Nos. 85–5124, 85–5182.

United States Court of Appeals, Sixth Circuit.

Argued May 8, 1986.

Decided May 14, 1986.

Joe B. Brown, U.S. Atty., Nashville, Tenn., Gregory L. Nelson, Atty., Tax Div., Dept. of Justice, Washington, D.C., Glenn L. Archer, Jr., Michael L. Paup, Raymond W. Hepper (argued), Robert A. Bernstein, for defendant-appellant, cross-appellee.

Richard W. Bethea, Jr., Chattanooga, Tenn., John C. Stophel, Frank C. Ingraham (argued), Ingraham, Corbett & Zinn, Nashville, Tenn., for plaintiffs-appellees, cross-appellants.

Before KRUPANSKY and GUY, Circuit Judges, and PECK, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

Defendant-appellant the Government appealed the district court's order, 604 F.Supp. 210, denying its motion for judgment notwithstanding a jury verdict in favor of plaintiffs in this tax action to recover penalties and interests assessed by the Internal Revenue Service (IRS). Plaintiffs-cross-appellants Tennessee Baptist Children's Homes, Inc. (TBCH) and TBCH's executive director and treasurer Dr. Evans B. Bowen (Bowen) cross-appealed the district court's order denying their motion for attorney fees under the Equal Access to Justice Act (EAJA).

A review of the record in this proceeding disclosed that TBCH is an incorporated charitable organization that is exclusively funded and controlled by the Tennessee Baptist Convention (Convention). It was formed in 1891 as the Tennessee Orphans Home. Its charter provided in part that it "shall have the power to establish and maintain an orphanage for the care, control, support, education and training of and procuring of homes for orphaned, destitute, or helpless children...." TBCH currently operates four child care facilities within the State of Tennessee. Children are accepted on a nonsectarian basis; however, the enrollment is systematically regimented to a daily program calculated to indoctrinate and/or convert participating children to the Baptist faith.

TBCH is and has been, since its inception, exempt from federal taxation.[1] For some time prior to 1969, TBCH as well as all other tax exempt organizations "operated, supervised, or controlled by or in connection with a religious organization" were also exempted from filing informational returns with the IRS (Form 990). Rev.Act of 1943, Ch. 63, § 117(f), 58 Stat. 37 (1944), codified as amended as 26 U.S.C. § 6033 (superseded). In 1969, however, Congress amended 26 U.S.C. § 6033 of the Internal Revenue Code (I.R.C.) to limit the mandatory exemption from filing informational returns to "churches, their integrated auxiliaries, and conventions or associations of churches," as well as certain other organizations. I.R.C. § 6033(a)(2)(A). The amendment also authorized the Secretary of the Treasury, within his discretion, to relieve any organization required under the statute to file an informational return from filing such a return where the Secretary determined the filing was not necessary to the efficient administration of the Internal Revenue laws. I.R.C. § 6033(a)(2)(B). It should be noted that amended § 6033(a)(1) imposed no taxes upon the affected tax exempt organizations, but merely required such organizations to disclose information that the IRS, by rule or regulation, deemed necessary to implement the Internal Revenue laws. I.R.C. § 6033(a)(1).

The I.R.C. as amended in 1969 did not define the terms "church" or "integrated auxiliary." On January 4, 1977, the IRS defined, or attempted to define, the term "integrated auxiliary" of a church as that term was employed in I.R.C. § 6033(a)(2)(A)(i) through its newly enacted regulation, 26 C.F.R. § 1.6033–2(g)(1)(i) & (g)(5), Treasury Regulation (Treas.Reg.) § 1.6033–2(g)(1)(i) & (g)(5). The IRS immediately subsequent to the effective date of its newly promulgated regulation notified

---

1. Section 501(c)(3) of the Internal Revenue Code identifies certain organizations exempt from taxation under § 501(a):

    (3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

I.R.C. § 501(c)(3).

TBCH that it would, commencing at the end of its current fiscal year on October 31, 1977 and thereafter, be required to file an informational return. TBCH refused to comply with the IRS directive, asserting that it was an "integrated auxiliary of a church" within the intent and meaning of I.R.C. § 6033 as amended and Treas.Reg. § 1.6033–2(g)(5) and was therefore exempt from filing informational returns and, in the alternative, charged infringements of its First Amendment constitutional rights. The IRS accordingly assessed and collected penalties, plus interest, from TBCH through October 31, 1982 for its noncompliance pursuant to I.R.C. § 6652(d). Timely claims for refund were filed and disallowed.

On February 15, 1983, plaintiffs TBCH and Bowen filed an action in the United States District Court for the Middle District of Tennessee seeking recovery of $29,-665.12 in penalties, plus interest, paid to the IRS. Jurisdiction was conferred upon the district court by 28 U.S.C. § 1346(a)(1). On September 13, 1983, the Government filed a motion for summary judgment asserting that, although it conceded that TBCH was a tax exempt organization within the meaning of I.R.C. § 501(c)(3) and was affiliated with a church pursuant to Treas.Reg. § 1.6033–2(g)(5)(iii), as a matter of law TBCH did not qualify as an organization whose "principal activity" was "exclusively religious" as required by Treas. Reg. § 1.6033–2(g)(5)(i)(c) because its services were dedicated to the entire community and its nonreligious activity, namely its operation of the child care facilities, was independently sufficient to support its tax exemption on a basis under § 501(c)(3) other than religious.

TBCH responded to the Government's motion for summary judgment by insisting that its principal activity was "exclusively religious" as defined in Treas.Reg. § 1.6033–2(g)(5), and not primarily charitable as erroneously hypothecated by the Government, because its sole and primary dedication and purpose for maintaining and operating its child care facilities was and is to create a pervasively Christian environ-

ment for leading its enrolled children to a saving relationship with Christ and to systematically indoctrinate and/or convert those children committed to its care to the tenets of the Baptist faith. As such, TBCH challenged that it had no secular counterpart. The trial court, by margin entry, reserved ruling upon the Government's motion and the record does not disclose a final disposition of the motion, although subsequent action by the court would imply that the summary judgment was subsumed by the trial and effectively *overruled.*

At the outset of the trial on August 27, 1984, the district court rejected the Government's argument that it was entitled to judgment as a matter of law because the "exclusively religious" test of Treas.Reg. § 1.6033–2(g)(5)(ii) was not satisfied if, as in the case at bar, an organization's nonreligious activities were independently sufficient to support tax exemption under I.R.C. § 501(c)(3). The trial judge reasoned that, by assigning significance to the term "principal activity" as that term is employed in Treas. Reg. § 1.6033–2(g)(5)(i)(c) and (5)(ii) and considering its relationship to the phrase "exclusively religious," factual issues of material consequence were joined to be judged by a jury. In substance, the trial judge concluded that an organization could, under given circumstances, engage in certain nonreligious activities and still come within the ambit of the "exclusively religious" test. Accordingly, the trial court confined the jury's deliberations to the narrow factual consideration of identifying the principal activity pursued by TBCH and, secondly, whether such activity was "exclusively religious."

TBCH introduced exhaustive testimony and evidence that was calculated to support its position that, from its inception in 1891, it was committed to provide a Christian environment for orphans and homeless or neglected children, within which highly regimented environment it could develop the physical, intellectual, and spiritual growth of children committed to its care for the purposes of indoctrinating and/or converting them to the Baptist faith, and that the

child care program and facilities would not have been initially undertaken or actively pursued throughout the years but for the fundamentally religious activities and objectives inherent within its program. At the conclusion of the evidence, TBCH's affirmative evidence stood uncontradicted, the Government having elected to rely solely upon TBCH's charter, by-laws, and other similar documentary evidence to justify its position that TBCH failed to qualify for exemption from filing informational returns pursuant to I.R.C. § 6033(a)(2)(A)(i) and Treas.Reg. § 1.6033–2(g)(5) as an organization whose principal activity was "exclusively religious." The district court denied the Government's motions for directed verdict at the close of plaintiffs' proof and at the close of all proof.

The narrow issues of fact defined by the trial court were submitted to the jury with an appropriate instruction,[2] together with two written special interrogatories to which the jury responded:

1. Q. Is the plaintiff, Tennessee Baptist Children's Homes, Inc., a "church" as that term has been defined by the Court?

   A. No.

2. Q. Is the principal activity of the plaintiff, Tennessee Baptist Children's Homes, Inc., "exclusively religious", as that term has been defined by the Court?

   A. Yes.

The trial court thereupon entered judgment upon the verdict and subsequently overruled the Government's motion for judgment notwithstanding the verdict or, in the alternative, a new trial. Motions for costs and attorney fees pursuant to 28 U.S.C. § 2412 (EAJA) filed on behalf of TBCH and Bowen were also denied by the trial court.

**2.** The trial judge instructed the jury on the meaning of the term "principal activity" as follows:

The parties disagree as to that problem, whether the principal activity of the Childrens Homes is exclusively religious. The principal activity of an organization is its most important consequential or influential activity.

It is commonplace for an organization to have more than one activity. In that event

The sole issue confronting this court on appellate review was the propriety of the district court's decision which overruled the Government's motions for a directed verdict, JNOV, and/or a new trial predicated upon the Government's theory that the clear language of the pertinent sections of the statute and the regulations supported, as a matter of law, a judgment in its favor and foreclosed a finding that there existed a material conflict of fact to be judged by a jury.

The Internal Revenue Code did not define the terms "church" or "integrated auxiliary" as those terms were employed in I.R.C. § 6033(a)(2)(A)(i), which section identified organizations qualifying for mandatory exemption from filing of informational returns. In an effort to implement the relevant section of the statute, the Department of the Treasury enacted Treas. Reg. § 1.6033–2(g)(1)(i), *et seq.*, which tracked the congressional mandate and emphasized that a "church" or its "integrated auxiliary" was not required to file an informational return. Treas.Reg. § 1.6033–2(g)(5) defined "integrated auxiliary" as used in the I.R.C. in the following language:

(5)(i) For the purposes of this title, the term "integrated auxiliary of a church" means an organization:

(a) Which is exempt from taxation as an organization described in section 501(c)(3);

(b) Which is affiliated (within the meaning of paragraph (g)(5)(iii) of this section) with a church; and

(c) Whose principal activity is exclusively religious.

Treas. Reg. § 1.6033–2(g)(5)(ii) ascribed the following meaning to the phrase "exclusively religious":

you are to identify the principal activity by selecting the activity that is most significant, consequential, or influential. In this respect, the principal activity will not be considered to be exclusively religious if that activity is educational, literary, charitable or of another nature other than religious that would serve as a basis for tax exemption under 501(c)(3) of the Internal Revenue Code.

Tr. 506–07.

(ii) An organization's principal activity will not be considered to be exclusively religious if that activity is educational, literary, charitable, or of another nature (other than religious) that would serve as a basis for exemption under section 501(c)(3).

Treas. Reg. § 1.6033–2(g)(5)(iii) defined the term "affiliated" as employed in § 1.6033–2(g)(5)(i)(b) as an organization "either controlled by or associated with a church or with a convention or association of churches."

Significantly absent from the definitions articulated by the regulations was a definition of the term "principal activity" as that phrase is utilized in Treas. Reg. § 1.6033–2(g)(5)(i)(c) and (g)(5)(ii). It is, however, apparent from the arguments advanced by the adverse parties to this action that the regulation left open the factual issue of identifying the "principal activity" of an organization seeking exemption. Treas. Reg. § 1.6033–2(g)(5)(ii) provides only that "an organization's *principal activity* will not be considered to be exclusively religious if *that activity* is educational, literary, charitable, or of another nature (*other than religious*) that would serve as a basis for exemption under section 501(c)(3)." (emphasis supplied). The regulations therefore necessitate a preliminary factual inquiry as to the identification of the affiliate's principal activity. The Government, having ignored the factual issue thus presented, erroneously hypothecated the factually unsupported conclusion that the principal activity of TBCH was as a matter of law the operation of an orphanage dedicated to the public interest. Having formulated its erroneous factual premise with respect to the identification of TBCH's "principal activity," the Government's argument that TBCH, although it was a tax exempt organization within the meaning of I.R.C. § 501(c)(3) and was affiliated with a church within the meaning of Treas.Reg. § 1.6033–2(g)(5)(iii), as a matter of law did

not qualify as an organization whose "principal activity" was "exclusively religious," inasmuch as its "principal activity" (as identified by the Government), namely, the operation of its child care facilities, was independently sufficient to support its tax exemption on a basis under § 501(c)(3) other than religious, followed naturally and logically. In sum, the Government assumed without factual support the identification and character of the "principal activity" pursued by TBCH, which was the ultimate controversial premise presented to the court and/or jury for consideration and adjudication.

■ Mindful of the Government's concessions that TBCH was a tax exempt organization as described in I.R.C. § 501(c)(3) which was affiliated with a church within the meaning of Treas.Reg. § 1.6033–2(g)(5)(iii), this court upon considering the pertinent statutory and regulatory provisions in pari materia and assigning significance to the phrase "principal activity" as it relates to the term "exclusively religious" must, as did the trial court, conclude that within the context of the equally persuasive arguments advanced by the adversaries to this action, there was presented a conflict of material fact as to the "principal activity" pursued by TBCH, which factual controversy was within the province of the jury.

The Government also contended that Example 3 of Treas. Reg. § 1.6033–2(g)(5)(iv) was indistinguishable from TBCH's operation as a matter of law. Example 3 purported to illustrate that, under Treas.Reg. § 1.6033–2(g)(5), a § 501(c)(3) tax exempt nonprofit corporation operating an orphanage affiliated with a church does not qualify as an "integrated auxiliary" of a church because the operation of the child care facilities was independently sufficient to support its tax exemption under I.R.C. § 501(c)(3) even absent affiliation with a church.[3]

---

**3.** Example 3 provides in full:

Example (3). Orphanage C, exempt from Federal income tax as an organization described in section 501(c)(3), is a nonprofit corporation organized and operated as an orphanage. It is affiliated (within the meaning of paragraph (g)(5)(iii) of § 1.6033–2) with a church which is also exempt as an organiza-

The presence of Example 3 in the regulations, however, does not foreclose the existence of a jury question as to whether TBCH's principal activity was exclusively religious. Initially, analogous case law discloses that examples incorporated into the Treasury Regulations are generally considered illustrative only and are not to be considered as dispositive of controversial issues joined by the proceedings. *See Nico v. C.I.R.*, 565 F.2d 1234, 1238 (2d Cir.1977) (illustrative, hypothetical examples employing particular deductions did not contradict clear language of regulation); *1210 Colvin Avenue, Inc. v. United States*, 81–1 U.S. Tax Cas. (CCH) ¶ 9474 at 87,383 (W.D.N.Y. 1981) (definition of controlled corporation not limited to illustrative examples utilizing particular percentage figures regarding extent of control); *Solomon v. C.I.R.*, 67 T.C. 379, 386 (1976) (examples in Treasury regulations portraying particular form of corporate reorganization in context of deferral payments are merely illustrative and do not purport to limit application of statute), *aff'd*, 570 F.2d 28 (2d Cir.1977), *and aff'd sub nom. Katkin v. C.I.R.*, 570 F.2d 139 (6th Cir.1978).

■ Moreover, the Government's contention that Example 3 is indistinguishable from the child care operation conducted by TBCH so as to support judgment in favor of the Government as a matter of law again has ignored the controlling language of "principal activity" as employed in both the text of Treas. Reg. § 1.6033–2(g)(5) and

in Example 3. The Government has merely restated its prior argument in a somewhat different form. However, the issue has not changed. The task of identifying the principal activity pursued by the organization remained a preliminary question of fact in interpreting both Treas.Reg. § 1.6033–2(g)(5)(ii) and Example 3. The Government's argument anchored in Example 3 must therefore fail for the same reasons that its previously advanced contention predicated upon an interpretation of the text of Treas. Reg. § 1.6033–2(g)(5)(ii) did not succeed. The trial court permitted into evidence a copy of the entire regulation, including Example 3. The record reflected evidence that distinguished TBCH's operations from those described in Example 3, as demonstrated by testimony regarding the pervasively religious character and purpose of TBCH's services. In sum, the Government's interpretation of Example 3 as well as the text of the regulation ignored the presence of the factual issue joined by the failure of the regulation to define the controlling language "principal activity," which the trial court ultimately submitted to the jury for determination with reference to the evidence presented by the adverse parties and the entire regulation.

Accordingly, the district court's denial of the Government's motions for directed verdict, JNOV, and/or a new trial was appropriate. Inasmuch as the district court's entry of judgment pursuant to the jury's

tion described in section 501(c)(3). The orphanage is dedicated to the service of the entire community in which it is located. The principal activity of the orphanage is to provide children with housing, medical care, guidance, and similar services and facilities on a non-sectarian basis. Since this activity could serve as the basis for Orphanage C's exemption under section 501(c)(3) if it were not affiliated with a church, Orphanage C is not an integrated auxiliary of a church within the meaning of paragraph (g)(5) of § 1.6033–2.

Treas.Reg. § 1.6033–2(g)(5)(iv) ex. 3. Example 6, in contrast, states:

Example (6). Orphanage F performs functions similar to those of Orphanage C de-

scribed in example (3). However, Orphanage F does not have a legal identity separate from that of the church. Thus Orphanage F is not itself exempt from tax as an organization described in section 501(c)(3), and is not an integrated auxiliary of a church. The exception from filing a return under section 6033 accorded to the church of which Orphanage F is a part also applies to Orphanage F itself. Accordingly, Orphanage F is not required to file a return under section 6033.

*Id.* at ex. 6. The different results turn on the fact that Orphanage C is incorporated separately from the affiliated church while Orphanage F enjoys no legal identity separate from the church.

verdict effectively declared TBCH to be an integrated auxiliary of a church exempt from filing informational returns, there remains no occasion to consider TBCH's challenges to the validity of the regulations or the statute as charged in the cross-appeal.

■ Cross-appellants TBCH and Bowen have also asserted on cross-appeal that the district court erred in denying their motion for an award of attorney fees pursuant to the Equal Access to Justice Act (EAJA). EAJA provides that attorney fees shall be awarded to a prevailing party other than the United States in any civil action brought by or against the United States unless the court finds that the position of the Government was "substantially justified" or unless "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The district court in the case at bar denied an EAJA award of attorneys fees and costs to plaintiffs, noting the good faith of the Government's prosecution efforts to resolve the unique issues that were joined by the proceedings and the absence of existing legal precedent addressing those issues. 604 F.Supp. at 214. A trial judge's ruling in this regard is to be modified only when there is a demonstration of an abuse of discretion. *Matthews v. United States*, 713 F.2d 677, 682 (11th Cir. 1983); *Hoang Ha v. Schweiker*, 707 F.2d 1104, 1105 (9th Cir.1983). Additionally, the question of substantial justification is essentially one of reasonableness. *Kreimes v. Department of Treasury*, 764 F.2d 1186, 1190 (6th Cir.1985). This court concludes that under the facts and circumstances presented by the controversy, the Government's good faith prosecution of the novel issues raised was reasonable and substantially justified and the district court did not abuse its discretion in denying attorney fees and costs to plaintiffs.

Accordingly, the judgment for plaintiffs entered by the district court pursuant to the jury verdict and the district court's order denying plaintiffs' motion for attorney fees are AFFIRMED.