**Bradley James JOHNSON, et al., Plaintiffs,**

**v.**

**Edwin MEESE,[1] et al., Defendants.**

**Civ. A. No. 78–71747.**

United States District Court,
E.D. Michigan, S.D.

Sept. 4, 1986.

---

1. Edwin Meese is currently the Attorney General of the United States. F.R.Civ.P. 25(d)(1).

Martin Geer, Paul Reingold, Michigan Clinic Law Program, Ann Arbor, Mich., for plaintiffs.

Ellen G. Ritteman, Asst. U.S. Atty., Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

PHILIP PRATT, Chief Judge.

This is a class action originally brought on behalf of approximately 200 inmates at the Federal Corrections Institute at Milan, Michigan, who were sentenced to custodial terms under the Youth Corrections Act, 18 U.S.C. § 5005 *et seq.* (YCA). In 1980, this court held that the defendants had violated the YCA by not giving youthful offenders individual treatment as mandated by statute, and by not segregating YCA inmates from adult inmates. *Johnson v. Bell,* 487 F.Supp. 977 (E.D.Mich.1980). The court directed the parties to formulate a comprehensive remedial plan to bring the Milan facility into compliance with the law. Elements of the resulting plan were appealed to the Sixth Circuit, which vacated the judgment in part, affirmed in part, and reversed and remanded in part. *Martin v. Attorney General of United States,* 771 F.2d 102 (6th Cir.1985). Though some issues concerning the remedy remain outstanding, plaintiffs' counsel have moved for attorneys' fees pursuant to Equal Access to Justice Act (EAJA). 28 U.S.C. § 2412.

The EAJA provides that:

[A] court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded ..., incurred by that party in any civil action ... brought against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The government concedes that the plaintiffs are prevailing parties, so the issue is whether the position of the United States was "substantially justified."[2] Until recently, there was a split in the Circuits as to whether this standard applied only to the government's litigation position, or whether it referred to the underlying government conduct as well. *Trident Marine Const. v. District Engineers Etc.,* 766 F.2d 974 (6th Cir.1985). In 1985 Congress resolved this dispute by amending the Act to provide that the "position of the United States means, in addition to the position taken by the United States

---

**2.** The government also does not contest the timing of the motion. This issue has been bifurcated, with the issue of the size of the award to await the court's determination that an award is appropriate.

in the civil action, the action or failure to act by the agency upon which the civil action is based...." 28 U.S.C. § 2412(d)(2)(D). Thus to avoid having fees assessed against it, the government must show that its pre-litigation conduct, as well as its litigation position, was substantially justified.

 Substantial justification "constitutes a middle ground between an automatic award of fees to a prevailing party and an award made only when the government's position was frivolous." *Washington v. Heckler*, 756 F.2d 959, 961 (3rd Cir.1985). The Ninth Circuit has written that:

> [T]he EAJA was intended to facilitate the efforts of private parties to vindicate their rights when confronted with arbitrary actions by representatives of the government, without at the same time discouraging the type of vigorous advocacy on the part of the government counsel which Congress felt was essential to the enforcement of federal law.

*Minor v. United States*, 797 F.2d 738 (9th Cir.1986). While some Circuits have held that this standard is more stringent than one of reasonableness, *see, e.g., Spencer v. N.L.R.B.*, 712 F.2d 539 (D.C.Cir.1983), *cert. denied*, 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984), the Sixth Circuit has held that the question of substantial justification is essentially one of reasonableness. *Tennessee Baptist Children's Home, Inc. v. United States*, 790 F.2d 534, 540 (6th Cir.1986); *accord. Minor, supra,; Lee v. Johnson*, 799 F.2d 31 (3rd Cir.1986); *Granville v. Dept. H.E.W.*, 796 F.2d 1046 (8th Cir.1986); *United States v. Kemper Money Market Fund, Inc.*, 781 F.2d 1268 (7th Cir. 1986).[3] The government has the burden to demonstrate (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced.

*Donovan v. Dialamerica Marketing*, 757 F.2d 1376, 1389 (3rd Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 246, 88 L.Ed.2d 255 (1985). If the case turns upon an unsettled or disputed issue of law, the government's position may be substantially justified even though it is rejected by the court. However, if its position "clearly offends legal precedent," it is unlikely that the government will be able to carry its burden. *Washington*, 756 F.2d at 961–62; *Foster v. Tourtellote*, 704 F.2d 1109 (9th Cir.1983).

 The court finds that the Bureau of Prisons (BOP) intentionally refused to comply with the YCA, and that both its pre-litigation conduct and its legal defense of this conduct were not substantially justified. In its 1980 opinion, this court said:

> It is readily apparent from the foregoing analysis that the Bureau of Prisons has abandoned the underlying spirit and corrections philosophy of the Youth Corrections Act and in so doing has subverted the clear mandate of the Congress.

*Johnson*, 487 F.Supp. at 987. In reaching this conclusion, the court echoed the findings of Judge Matsch in a similar case:

> It is clear from the record in this case and the commendable candor of those speaking for the respondents that the Bureau of Prisons and the United States Parole Commission have purposely and systematically failed to follow the requirements of the YCA because both of these agencies are in disagreement with that law. The focus is a matter of fundamental philosophy concerning the purpose for confinement of offenders.
>
> \* \* \* \* \* \*
>
> It is not the Bureau of Prisons in unaware of the requirements of the YCA, it is more a matter of disagreement with the law.

*Watts v. Hadden*, 469 F.Supp. 223, 231 (D.Col.1979), *aff'd.*, 651 F.2d 1354 (10th Cir. 1981).[4] Other courts which had under-

---

3. For a discussion of the various interpretations of the "substantially justified" standard, *see, Gavin v. Bowen*, 635 F.Supp. 1251 (N.D.Ill. 1986).

4. The government argues that it was not "absolutely certain" that its position in 1978 was wrong. It goes almost without saying that however "substantially justified" is defined, it does not put the burden on the plaintiffs to show to a

taken a close analysis of the YCA before this suit was filed concluded that the government did not comply with the act. *United States Ex Rel. Dancy v. Arnold,* 572 F.2d 107 (3rd Cir.1978); *Brown v. Carlson,* 431 F.Supp. 755 (W.D.Wis.1977).

The government's position throughout this litigation has been that the YCA is a "bad law." Expert testimony was presented attacking the YCA on both practical and theoretical grounds. As noted in this court's opinion, high officials of the BOP stated candidly that they did not feel constrained by the YCA, and admitted that they had strayed from the intent of the Act. *Johnson,* 487 F.Supp. 987. The officials of the BOP were thus derelict in the duty to uphold and implement the law as promulgated by Congress, regardless of whether or not they agreed with that law.

> It is neither necessary nor appropriate to resolve this question of correctional philosophy to determine the issues in this case. It is not a judicial question. It is a political question which must be awarded by the political branches of government. All that must be determined here is which of the political branches has controlling authority where there is a direct conflict between the Congress and agencies in the Executive Branch. The answer to that question is rooted in the basic principles of representative government.
>
> It is as much for those who are the elected representatives of the people to determine the parameters of the penal system as it is for them to define what conduct shall be characterized as criminal. In sum, the power to make the law is the power of the legislature.
>
> \* \* \* \* \* \*
>
> In the enactment of the YCA, Congress clearly and unequivocally directed the establishment of a separate system of re-

habilitative treatment for youthful offenders and required the consideration of its use by sentencing judges as an alternative to imprisonment. When that judicial discretion has been exercised by a commitment for treatment, it is the plain duty of the Bureau of Prisons to conform to the legislative mandate.

*Watts,* 469 F.Supp. at 232. This court also believed it necessary to remind the BOP of its duty to obey the law.

> Whether the current Bureau approach is the most effective or productive or proven is not the issue—the issue is whether, particularly in view of the thorough and detailing investigation by the Congress of the YCA model and its dictates, the Bureau has the authority to disregard the spirit and plain language of the Act. In concert with Judge Matsch in *Watts* and Judge Doyle in *Brown,* this Court holds it cannot, and that recourse must be hand to Congress who may or may not accept the present position of the Bureau and institute any changes it deems advisable or repeal the Act, in toto, as requested by the Director. In the interim, of course, the implementation of the YCA must be pursued.

*Johnson,* 487 F.Supp. at 988. Even in its response to this petition for fees, the government stubbornly continues to justify its refusal to implement the YCA by arguing that the theoretical underpinnings of the YCA had been "clearly rejected." This court cannot emphasize strongly enough that disagreement with the law does not substantially justify a decision by a government agency not to implement the law.[5]

The government also argues that several courts have upheld the practices of the BOP. *See, Outing v. Bell,* 632 F.2d 1144 (4th Cir.1980); *Abernathy v. United States,* 418 F.2d 288 (5th Cir.1969); *Foote v. United States,* 306 F.Supp. 627 (D.Nev. 1969). These cases do not substantially

---

certainty the impropriety of government conduct in order to recover fees. Rather, the burden is on the government to convince the court that the BOP's position was reasonable, so as to overcome the presumption that prevailing plaintiffs are awarded fees.

5. The YCA was eventually repealed by Congress effective October 12, 1984, by Pub.L. 98–473, Title II, § 218(a)(8), 98 Stat. 2027. Of course, this repeal in no way justified the BOP's disregard of the law prior to 1984.

support the government's position. First, these cases only dealt with the issue of the power of the Attorney General to determine the place of confinement of individuals committed to custody. The question of the BOP's compliance with the YCA generally was not at issue. Secondly, the issue of segregation was dealt with in a most perfunctory manner, with the claims of the petitioners dismissed in a sentence or two, without any analysis of the YCA or the Congressional intent underlying the Act. Third, those cases were all habeas corpus proceedings brought by prisoners without counsel, making it unlikely that the complex issue of government compliance with the YCA would ever be raised.

The government also seeks support for its position in a line of cases holding that a juvenile sentenced under the Federal Juvenile Delinquency Act, 18 U.S.C. § 5031 *et seq.*, may be confined in a penitentiary with adults. *See, Sonnenberg v. Markley*, 289 F.2d 126 (7th Cir.1961). These cases lend the government no assistance, as the Juvenile Delinquency Act was amended in 1974 to provide that juveniles may not be confined in institutions where they may have regular contact with adult criminals. 18 U.S.C. § 5039. *See, United States Ex Rel. Dancy v. Arnold*, 572 F.2d 107, 113–114 (3rd Cir.1978). If anything, the Congressional response to the juvenile segregation cases should have been an additional signal to the BOP of Congress' intent as to the treatment of YCA offenders.

There is not a single case which engaged in an in-depth review of the YCA that supports the government's position. *Watts, Brown,* and *Dancy* flatly rejected the government's arguments in detailed opinions, two of which were issued before this action was filed and one issued one year before this court rendered its opinion. The Supreme Court's only extensive review of the YCA, in a case involving the discretion of the sentencing judge under the Act, should have put the BOP on notice that its interpretation of the YCA was unacceptable. *Dorszynski v. United States*, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974). Noting that the YCA was "the most comprehensive federal statute concerned with sentencing," *Id.* 418 U.S. at 432, 94 S.Ct. at 3047, the court said that "[a]n important element of the program was that once a person was committed for treatment under the Act, the execution of sentence was to fit the person, not the crime for which he was convicted." *Id.* at 434, 94 S.Ct. at 3048. Obviously, the Supreme Court thought that the YCA mandated individualized attention to youth offenders. The court also wrote that "[a]n integral part of the treatment program of the segregation of the committed persons, insofar as practical, so as to place them with those similarly committed, to avoid the influence of association with the more hardened inmates serving traditional criminal sentences." *Id.* The Supreme Court's characterization of segregation as "integral" to the YCA hardly gives substantial support to the BOP's position that it had the discretion to not implement segregation at all if it believed, for philosophical reasons, that segregation was inappropriate.

■ In sum, the BOP has for decades openly refused to implement the YCA, and is unable to point to any caselaw which would substantially support its position. While there are a few decisions extant which elevate the government's litigation position from the merely frivolous to the colorable, they do not by any stretch of the imagination carry sufficient weight to allow the term "reasonable" to describe either the government's prelitigation conduct or legal defense of that conduct. To carry its burden of showing its position was substantially justified, the government must do more than show its position was not frivolous. Accordingly, the plaintiffs' motion for fees and costs under the Equal Access to Justice Act is granted, with plaintiffs' counsel to submit affidavits detailing their fees and costs within 45 days of this order.

IT IS SO ORDERED.